IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| IOWA HOTEL INVESTORS, LLC, | ) ) | |
| | ) | Bankruptcy No. 11-01836 |
| Debtor. | ) | |

---------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| IOWA HOTEL INVESTORS II, LLC, | ) ) | |
| | ) | Bankruptcy No. 11-01837 |
| Debtor. | ) | |

**ORDER RE: MOTION TO DESIGNATE PROCEEDING AS A SINGLE
ASSET REAL ESTATE CASE**

These matters came before the Court in a hearing on the Motion of creditor

U.S. Bank National Association (U.S. Bank) to Designate these Proceedings as

Single Asset Real Estate Cases.   Eric E. Walker (admitted pro hac vice) and Abbe

Stensland represented U.S. Bank.   Ronald C. Martin represented Debtors Iowa

Hotel Investors, LLC I & II.   After hearing evidence and arguments of the parties,

the Court took the matter under advisement.   This is a core proceeding under 28

U.S.C. § 157(b)(2)(A).

## STATEMENT OF THE CASE

Debtors own and operate Country Inn and Suites hotels in Cedar Falls, Iowa

and Waterloo, Iowa.   In their voluntary Chapter 11 Petition, Debtors each indicated

that the "Nature of Business" was "Other" and not "Single Asset Real Estate."   The

Bank moved for an Order designating both Debtors' bankruptcy cases as single asset

real estate cases in order to make applicable the expedited time and payment

requirements of § 362(d)(3).   Debtors resist and argue the multi-faceted nature of

their hotel operations prevent them from being classified as "single asset real estate"

cases under the definition in § 101(51B).   The Court agrees with Debtors and

declines to designate these as single asset real estate cases.

## FINDINGS OF FACT

Debtor's Cedar Falls Country Inn and Suites has 3 full-time employees and 23

part-time employees.   The hotel has 64 rooms.   It provides a variety of services to

its customers.   The services include room cleaning, complimentary breakfast, a

whirlpool and swimming pool, a fitness center, laundry services, dry cleaning

pickup and delivery, and internet and phone service.   The hotel includes a business

center.   It has a separate meeting room that hotel customers or members of the

public may rent for functions, meetings, and events.   Debtor also performs routine

business activities on site including budgeting, training employees, facility

maintenance, and quality control.

Debtors' Waterloo Country Inn and Suites also employs 3 full-time

employees, but has a total of thirty to forty employees.   The Waterloo Property

offers the same amenities as the Cedar Falls Property.


## CONCLUSIONS OF LAW AND DISCUSSION

U.S. Bank argues Debtors' hotels should be designated single asset real estate.

The Bankruptcy Code defines "single asset real estate" as:

> real property constituting a **single property or project**,
> other than residential real property with fewer than 4
> residential units, which **generates substantially all of the
> gross income of a debtor** who is not a family farmer and
> **on which no substantial business is being conducted by
> a debtor other than the business of operating the real
> property and activities incidental thereto**.

11 U.S.C. § 101(51B) (emphasis added).   This classification is relevant because of

its effect on the operation of the automatic stay of § 362.   In short, if U.S. Bank has

secured claims in "single asset real estate", it can obtain relief from the automatic

stay to foreclose on the real estate if Debtors fail to either file a plan within a

shortened amount of time or make specified monthly payments under 11 U.S.C.

§ 362(d)(3).   That section provides, in relevant part:

On request of a party in interest and after notice and a
hearing, the court **shall grant** relief from the stay provided
under subsection (a) of this section, such as by
terminating, annulling, modifying, or conditioning such
stay—

(3) **with respect to a stay of an act against single asset
real estate** under subsection (a), by a creditor whose claim
is secured by an interest in such real estate, **unless, not
later than the date that is 90 days after the entry of the
order for relief** (or such later date as the court may
determine for cause by order entered within that 90-day
period) **or 30 days after the court determines that the
debtor is subject to this paragraph, whichever is
later**—

(A) the **debtor has filed a plan of reorganization** that
has a reasonable possibility of being confirmed within a
reasonable time; **or**
(B) the **debtor has commenced monthly payments**
that--
    (i) may, in the debtor's sole discretion,
    notwithstanding section 363(c)(2), be made from rents
    or other income generated before, on, or after the date
    of the commencement of the case by or from the
    property to each creditor whose claim is secured by
    such real estate (other than a claim secured by a
    judgment lien or by an unmatured statutory lien); and
    (ii) are in an amount equal to interest at the then
    applicable nondefault contract rate of interest on the
    value of the creditor's interest in the real estate.

11 U.S.C. § 362(d)(3) (emphasis added).   "The purpose that § 362(d)(3) serves is,

where there is a single asset real estate Chapter 11 case, to impose an expedited time

frame for filing a plan."   In re Kkemko, Inc., 181 B.R. 47, 49 (Bankr. S.D. Ohio

1995).   Thus, in this case, if Debtors' assets were designated as "single asset real

estate," Debtors would have either 90 days from the order for relief or 30 days after

the court made the single asset determination to file a plan or begin making the

payments to U.S. Bank described in § 362(d)(3)(B).   If Debtors failed to take such

action, upon U.S. Bank's request under § 362(d)(3), the Court would be required to

grant relief from the stay for the Bank to foreclose on its claim.   Id. (stating court

"shall grant relief from stay" . . . unless debtor complies with § 362(d)(3)(A) or (B)).

Using the Bankruptcy Code definition, courts have adopted three

requirements necessary for characterizing a debtor's case as a "single asset real

estate" case:

> (1) the debtor must have real property constituting a single
> property or project (other than residential real property
> with fewer than 4 residential units), (2) which generates
> substantially all of the gross income of the debtor, and (3)
> on which no substantial business is conducted other than
> the business of operating the real property and activities
> incidental thereto.

In re Scotia Pacific Co., LLC, 508 F.3d 214, 220 (5th Cir. 2007) (citing and quoting

§ 101(51B)).   "If a debtor fails to meet any prong, it is not a [single asset real estate

debtor]."   Id.

Here, U.S. Bank argues Debtors' hotels should be classified as single asset

real estate because they meet all three requirements.   U.S. Bank cites case law in

5

which debtors who owned and operated hotels had successfully filed voluntary

single asset real estate cases.   Debtors argue that they do not qualify as single asset

real estate debtors.   Debtors contend they do not meet the third requirement because

its hotel is an active business rather than a mere passive income generator.

The Court concludes Debtors' properties do not constitute "single asset real

estate."   U.S. Bank fails to show — under the third requirement of § 105(51B) and

case law — that there is "no substantial business . . . being conducted by a debtor

other than the business of operating the real property and activities incidental

thereto."   Id.   The facts demonstrate Debtors' hotel operations constitute

something more than "operating the real property and activities incidental thereto."

Id.   This conclusion is consistent with other cases addressing the issue.   In re CBJ

Dev., Inc., 202 B.R. 467, 473–74 (B.A.P. 9th Cir. 1996) (hotel was "single asset real

estate" in part because operating hotel constituted something more than "operating

the property"); In re Whispering Pines Estae, Inc., 341 B.R. 134, 136 (Bankr.

D.N.H. 2006) (same).

In In re CBJ Development, the Ninth Circuit BAP provided extensive analysis

of the questions here — whether operating a hotel constitutes "operating the

property."   CBJ Dev., 202 B.R. at 470–73.   The BAP noted that terms "single asset

case," or "single asset real estate case" were well-known and predated adoption of

6

the § 101(51B) definition.   Id.   The terms colloquially referred to "real estate"

entities attempting to cling to ownership of real property in a depressed market . . .

rather than businesses involving manufacturing, sales or services."   Id. at 471

(quoting In re Philmont Development Co., 181 B.R. 200, 223 (Bankr. E.D. Pa.

1995)).   The BAP found that Congress had used the term "single asset real estate"

in the § 101(51B) definition as a term that had accumulated a settled meaning under

the common law.   Id.; see also Kkemko, 181 B.R. at 51 ("The drafters and

promulgators of § 101(51B) were working in a bankruptcy context, and we have no

doubt that their intention in using the phrase "single asset real estate" grew out of the

common usage of that term in bankruptcy.").   The BAP concluded that Congress

meant to incorporate that settled meaning.   CBJ Dev., 202 B.R. at 471.

The BAP then evaluated the common law definition of "single asset real

estate" from cases decided before the 1994 Bankruptcy Reform Act which codified

the definition.   Id.   The BAP concluded that those cases "consider hotels on a case

by case basis, emphasizing the number of persons employed by the hotel and the

services it provides."   Id.   On the specific facts before it, the BAP said:

> A 63 room full service hotel such as the Debtor's must
> employ a substantial number of people. Rooms must be
> cleaned, sheets and towels laundered, phone and other
> services provided. Thus, in this case the operation of the
> Hotel requires substantially more day to day activity than
> does the operation of an apartment complex. Accordingly,

7

the operation of the Hotel is sufficiently active in nature to
constitute a business other than the mere operation of
property. We conclude that the Hotel is not "single asset
real estate."

Id. at 472.

In Whispering Pines, the Bankruptcy Court for the District of New Hampshire

adopted the 9th Circuit BAP's analysis.   Whispering Pines, 341 B.R. at 135

(discussing and applying In re CBJ Development).   Whispering Pines involved

similar facts and a similar conclusion:

Debtor's hotel is an eighty-nine room hotel that serves
continental breakfast, maintains a swimming pool and
common areas, provides local and long distance phone
service, provides high speed Internet service, and operates
room-cleaning and towel-laundering services. Based on
these facts, the Court holds that, like the hotel in CBJ, the
Debtor's hotel "is sufficiently active in nature to constitute
a business other than the mere operation of property."

Id. at 135 (quoting CBJ Dev., 202 B.R. at 472).

U.S. Bank cited a line of cases in which a debtor that owned and operated a

hotel had voluntarily designated the property as single asset real estate.   See, e.g., In

re Scarlet Hotels, LLC, 392 B.R. 698, 701 (B.A.P. 6th Cir. 2008); In re

Euro-American Lodging Corp., 357 B.R. 700, 707 (Bankr. S.D.N.Y. 2007); In re

Equitable Dev. Corp., 196 B.R. 889, 890 (Bankr. S.D. Ala. 1996); In re LDN Corp.,

191 B.R. 320, 326–27 (Bankr. E.D. Va. 1996).   These cases stand for the

8

proposition that hotels may "opt in" to the single asset real estate classification.

They do not analyze whether a hotel would qualify as "single asset real estate."

The Court acknowledges there are some cases that could support a creditor's

attempt to designate the property "single asset real estate."   See Scotia, 508 F.3d at

222 (acknowledging split of case law in dicta); see also In re 5877 Poplar, L.P., 268

B.R. 140, 144 (Bankr. W.D. Tenn. 2001) (assuming that debtor who owned,

operated, and collected rents from a 126-unit Comfort Inn was a single asset debtor).

These cases contain little analysis, however, of the relevant factors.   The court in In

re 5877 Poplar, for example, merely concluded that the case was a single asset case.

The debtor was an owner-operator of a 126-unit Comfort Inn hotel.   Id. at 144.   It

simply stated that "this case is a single asset real estate case as contemplated under

sections 101(51B) and 362(d)(3) of the Bankruptcy Code" and included the

definition for each sections in a separate footnote.   Id.

Where the debtor owns and operates a hotel, the most applicable authority

supports the conclusion that a hotel, like the cases involved here, is not "single asset

real estate."   As discussed above, the hotel business in this case provides an array of

services similar to those in CBJ Development and Whispering Pines.

U.S. Bank points out that in CBJ Development, the court noted the hotel

contained a separate gift shop, restaurant, or bar on the premises.   CBJ Dev., 202

B.R. at 472–73. There is no gift shop, restaurant, or bar in either of the hotels involved here.   However, there is a separate conference room that — like a gift shop or restaurant — functions independent from the hotels' core business of providing rooms to sleep.   The conference rooms — like the gift shop or restaurant — can be used by guests and non-guests alike.   These rooms can be rented out and used for conferences, weddings, or other events that do not depend upon or even relate to guests staying at the hotels.

Moreover, the 9th Circuit BAP in CBJ Development reasoned that the core hotel activities, standing alone, constituted something more than "operating the property."   Id. at 472.   While the BAP agreed with the bankruptcy court's conclusion that the hotel gift shop, restaurant and bar constituted "substantial other business activity," that was simply a separate and independent reason sufficient to remove the hotel from the definition of "single asset real estate."   Id. at 472; see also Whispering Pines, 341 B.R. at 136 ("The CBJ court's primary holding was that the services—excluding the bar, restaurant, gift shop, and bus tours—involved in the operation of the hotel were reason enough to remove the hotel from the definition of 'single asset real estate.'").   Thus, even if there was not a separate conference room at each hotel, the services involved in the operation of the hotels could be "reason enough to remove the hotels from the definition of 'single asset real estate.'"

10

<u>Whispering Pines</u>, 341 B.R. at 136.   The active nature of a hotel business inherently

gives the hotel a better chance of reorganizing; there are more business activities and

thus more opportunities to cut costs.   This stands in opposition to the purpose of the

"single asset real estate" classification:

> [I]n enacting §§ 101(51B) and 362(d)(3), providing for
> extraordinary expedition in single asset real estate cases,
> Congress was motivated by a desire to accord relief in a
> particular familiar bankruptcy situation. That situation is
> where the owner of an encumbered building is attempting
> to avert loss of his building to his major lender who is
> grossly undersecured, and where there is no real hope that
> the owner can come forth with a viable confirmable
> Chapter 11 plan.

<u>Kkemko</u>, 181 B.R. at 51.

For all these reasons, the Court denies U.S. Bank's request to designate this as

single-asset real estate cases.

**WHEREFORE,** U.S. Bank National Association's Motions to Designate

Proceeding as Single Asset Real Estate Cases is DENIED.

Dated and Entered: December 2, 2011

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

11